SHUMAKER *v.* KLINE.

Automobiles—Passengers—Payment—Inducement.
    Plaintiff was a guest passenger of defendant motorist as a matter of law, where after defendant had agreed to convey plaintiff to his home some 23 miles away after a party at their common place of employment, plaintiff gave defendant $1, such incidental benefit to him, received after the agreement to furnish plaintiff a ride, not having been an inducement to furnish the transportation.

Appeal from Genesee; Gadola (Paul V.), J. Submitted April 17, 1952. (Docket No. 54, Calendar No. 45,399.) Decided May 16, 1952.

Case by John Shumaker against Edward Kline for personal injuries sustained while a passenger in

References for Points in Headnotes

5 Am Jur, Automobiles § 239.
Payments or contributions by or on behalf of automobile rider as affecting his status as guest. 10 ALR2d 1351.
Paying or sharing cost of gas and oil on pleasure trip as affecting one's status as guest within automobile guest statute. 155 ALR 575.
Host and guest relationship, within statute or rule regarding liability of driver or operator of motor vehicle for injury to guest, as between parties to "share-a-ride" arrangement. 146 ALR 640.
Who is a guest within contemplation of statute regarding liability of owner or operator of motor vehicle for injury to guest. 82 ALR 1365; 95 ALR 1180.
Who is entitled to benefit of "guest" statute. 109 ALR 667.

defendant's automobile. Verdict for plaintiff. Judgment for defendant *non obstante veredicto.* Plaintiff appeals. Affirmed.

*V. O. Braun* and *Kenneth B. Kelly,* for plaintiff.

*Gault & Davison* (*L. J. Carey* and *George J. Cooper,* of counsel), for defendant.

SHARPE, J. This case involves the question of whether plaintiff, John Shumaker, was a passenger for hire or a guest passenger.* The essential facts are not in dispute. On December 24, 1949, plaintiff, John Shumaker, lived with his wife and son at Owosso, Michigan. He was employed at the Junedale Market in Flint, Michigan, as a meat cutter. Defendant, Edward Kline, was also employed at the Junedale Market as a meat cutter.

On the day in question the Junedale Market gave a party for its employees, which included plaintiff and defendant. On work days plaintiff traveled from Flint to Owosso on a bus. He usually took the bus leaving Flint at 6:06 p.m. The party at the store lasted until 6:30 p.m. When the party broke up plaintiff asked defendant if he would take him to his home in Owosso, as he did not want to wait for the 9:30 p.m. bus. Defendant agreed to plaintiff's request, stating that he would be glad to do so, as he didn't have anything in particular to do before midnight Mass. Defendant started to take plaintiff to his home in Owosso, and while on the journey his automobile got out of control, resulting in serious injuries to plaintiff.

The case was tried before the court, with a jury being impanelled to try questions of fact. At the close of plaintiff's proofs defendant made a motion

---

* See PA 1949, No 300, § 401 (CL 1948, § 257.401 [Stat Ann 1951 Cum Supp § 9.2101]).—REPORTER.

for a directed verdict for the reason that plaintiff was a guest passenger. The court took the motion under advisement under the Empson act,* and at the close of all testimony defendant renewed his motion for a directed verdict.

The court again reserved decision on the motion, and submitted the cause to the jury, who, after deliberating, returned a verdict in favor of plaintiff in the sum of $2,750. Subsequently defendant made a motion to enter a judgment of no cause of action in favor of defendant, notwithstanding the verdict for the plaintiff, for reasons made at close of plaintiff's proofs and renewed at the close of all proofs. The court granted defendant's motion. Plaintiff appeals and urges that the question of whether plaintiff was a guest passenger involved a question of fact which was properly submitted to the jury.

Plaintiff testified:

"That evening we stayed at the store until 6:30 and I could not take my regular bus. The next bus left at 9:30, so I asked Mr. Kline to take me home in his automobile. He said he would take me home. I made the proposal.

"*Q.* Do you know, and if you do know, give us the exact conversation as near as you can, or the substance of it?

"*A.* I just asked if he would take me home because it was late, I did not want to wait that extra time. He said he would.

"*Q.* What else was said, if anything?

"*A.* I told him I would pay him for the ride home.

"*Q.* What was that?

"*A.* I told him I would pay him for the ride home.

"*Q.* Was anything said about how much you were to pay him?

"*A.* No, I gave him a dollar. The bus fare is 86 cents.

* See CL 1948 § 691.691 *et seq.* (Stat Ann and Stat Ann 1951 Cum Supp § 27.1461 *et seq.*).—REPORTER.

"*Q.* When you gave him the dollar what did he do or say?

"*A.* He said, 'O.K.' And we started."

On cross-examination plaintiff testified:

"The party was a store party for all employees. It started at 5 when we closed. We usually closed at 6. Due to the party I missed my bus so I couldn't leave until 9:30. It was Christmas Eve and my wife was in Owosso and I wanted to get home sooner than the 9:30 bus would get me there. I knew Mr. Kline had a car. I had driven with him before around town a little. We didn't eat lunch or dinner together very often prior to the accident. We had an occasional glass of beer together but did not visit in our homes. Kline was not married. When the party broke up I asked Mr. Kline if he would be able to take me over to Owosso. He said he would be glad to take me over. He said he didn't have anything in particular to do before midnight Mass.

"*Q.* So as a friendly gesture, then, Kline was perfectly willing to drive you over to your family on Christmas Eve?

"*A.* Yes. After we left the store we went up to (the home of) one of the employees and had something to eat. It was 23 miles to Owosso. The night was clear and the pavement dry.

"*Q.* Before you left the store down here, after you had made your arrangements to get this ride home, I think you testified that you gave Kline a dollar?

"*A.* Yes.

"*Q.* That was somewhat to reimburse him for gas and oil on that night, driving you 50 miles, there and back, is that right?

"*A.* Yes.

"*Q.* You made a friendly gesture, did that the same as Kline made a friendly gesture towards you in taking you over there?

"*A.* Yes."

In *Bond* v. *Sharp,* 325 Mich 460, we said:

"Whether the relationship between parties is that of a guest passenger or a passenger for hire depends upon the facts in each case. It has been held that where the arrangements between the parties are so indefinite and casual that sociability is the dominant element, then a guest relationship exists. See *In re Harper's Estate,* 294 Mich 453; *Guiney* v. *Osborn,* 295 Mich 559; *Brody* v. *Harris,* 308 Mich 234 (155 ALR 573).

"It is the general rule that whenever transportation is for the pecuniary benefit of the defendant, the transaction is not gratuitous and a passenger-for-hire relationship may exist. See *Foley* v. *McDonald,* 283 Mass 96 (185 NE 926); *Bushouse* v. *Brom,* 297 Mich 616; *Everett* v. *Burg,* 301 Mich 734 (146 ALR 639); *Miller* v. *Fairley,* 141 Ohio St 327 (48 NE2d 217)."

In *Bushouse* v. *Brom,* 297 Mich 616, we quoted with approval from *McCann* v. *Hoffman,* 9 Cal2d 279, 286 (70 P2d 909) as follows:

"Therefore, where a special tangible benefit to the defendant was the motivating influence for furnishing the transportation, compensation may be said to have been given. But it is not given where the main purpose of the trip is the joint pleasure of the participants. The payment of a portion of the expense, as for gasoline and oil consumed on the trip, is merely incidental and does not constitute the moving influence for the transportation. The provocation for the offer of transportation remains the joint social one of reciprocal hospitality or pleasure."

See, also, *Brody* v. *Harris,* 308 Mich 234 (155 ALR 573).

In *Dutcher* v. *Rees,* 331 Mich 215, we quoted with approval from 10 ALR2d 1354:

"The courts generally concur in holding that a mere incidental benefit resulting to the driver from the transportation is not sufficient to enlarge his

liability, but that the benefit must have been given as consideration for the transportation and, in some degree at least, have induced the defendant to extend the offer. So, benefits which may be regarded as merely gratuitous gestures of reciprocal hospitality, or social amenities extended without thought of bargaining, have been held not to be payment or compensation."

In the *Dutcher Case* and in the case at bar, defendant agreed to give plaintiff a ride before any offer of compensation was made by plaintiff. In our opinion plaintiff was a guest of defendant. The incidental benefit, resulting to the driver of the car, received after the agreement to furnish plaintiff a ride was not an inducement to furnish the transportation. The judgment is affirmed, with costs to defendant.

NORTH, C. J., and DETHMERS, BUTZEL, CARR, BUSHNELL, BOYLES, and REID, JJ., concurred.